United States District Court
Southern District of Texas

**ENTERED**

November 19, 2015

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| IN RE:  DMCA SECTION 512(h) | § | C.A. NO. 4:15-mc-0654 |
| SUBPOENA TO FACEBOOK, INC. | § | |
| | § | |
| | § | |
| | § | |

## OPINION AND ORDER

Pending before the Court in the above referenced cause, pursuant to the United States Copyright Act, as amended by the Digital Millennium Copyright Act ("DMCA"), seeking alleged copyright infringer identification information from service provider Facebook, Inc. ("Facebook") by means of its issued DMCA subpoena, issued pursuant to 17 U.S.C. § 512(h),[1] is Requestor

---

[1] Section 512(h) ("Subpoena to identify infringer") provides,

> **(1) Request.**--A copyright owner or a person authorized to act on the owner's behalf may request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer in accordance with this subsection.
>
> **(2) Contents of request.**--The request may be made by filing with the clerk-
>
> > **(A)** a copy of a notification described in subsection (c)(3)(A);
> >
> > **(B)** a proposed subpoena; and
> >
> > **(C)** a sworn declaration to the effect that the purpose for which the subpoena is sought is to obtain the identity of all alleged infringer and that such information will only be used for the purpose of protecting rights under this title.

-1-

Dennis Flaherty's Objection (instrument #8) to United States Magistrate Judge Frances Stacy's Order of May 20, 2015 (#7), denying Requestor's opposed motion to compel production of information to identify an alleged infringer (#3). In her Order,

---

**(3) Contents of subpoena.**-The subpoena shall authorize and order the service provider receiving the notification and the subpoena to expeditiously disclose to the copyright owner or person authorized by the copyright owner information sufficient to identify the alleged infringer of the material described in the notification to the extent such information is available to the service provider.

**(4) Basis for granting subpoena.**--If the notification filed satisfies the provisions of subsection (c)(3)(A), the proposed subpoena is in proper form and the accompanying declaration is properly executed, the clerk shall expeditiously issue and sign the proposed subpoena and return it to the requestor for delivery to the service provider.

**(5) Actions of service provider receiving subpoena.**--Upon receipt of the issued subpoena, either accompanying or subsequent to the receipt of a notification described in subsection (c)(3)(A), the service provider shall expeditiously disclose to the copyright owner or person authorized by the copyright owner the information required by the subpoena, notwithstanding any other provision of law and regardless of whether the service provider responds th the notification.

**(6) Rules applicable to subpoena.**--Unless otherwise provided by this section or by applicable rules of the court, the procedure for issuance and delivery of the subpoena, and the remedies for noncompliance with the subpoena, shall be governed to the greatest extent practicable by those provisions of the Federal Rules of Civil Procedure governing the issuance, service, and enforcement of a subpoena duces tecum.

-2-

Magistrate Judge Stacy, observing that "denial could reasonably be based on any of the grounds advanced by Facebook,"[2] actually denied the motion to compel because of "the complete absence of any nexus [other than Requestor's counsel's location] to this District, rendering venue improper, and the invalidity of the subpoena," given that the place of compliance was in Spring, Texas, "more than 100 miles from Facebook's closest office, in Austin, Texas."[3]  #7 at pp. 1-2.  Requestor objects not only to the substance of the Order, but also to the fact that it was issued before Requestor filed its reply (#6), which the Magistrate Judge therefore did not consider in her decision.[4]

---

[2] Facebook argued that Requestor's motion to compel should be denied because the subpoena was invalid on four grounds: (1) Requestor already has sufficient information to identify the alleged infringer because the Facebook page at issue provides a business name, a business address, and a business website; (2) the Court lacks personal/general jurisdiction over Facebook, which is a Delaware corporation with its principal place of business in Menlo Park, California; (3) venue is improper because Facebook is not subject to personal jurisdiction in this district; and (4) the place for compliance is more than 100 miles from where Facebook resides, is employed, or regularly transacts business under Fed. R. Civ. P. 45(c)(2)(A)(Facebook's closest office is in Austin, Texas).  "[T]he procedure for issuance and delivery of a [§ 512 subpoena . . . shall be governed to the greatest extent practicable by those provisions of the Federal Rules of Civil Procedure governing the issuance, service, and enforcement of a subpoena duces tecum."  17 U.S.C. § 512(h)(6).

[3] Requestor does not dispute that the production address listed on the issued DMCA subpoena is located mor than 100 miles from Facebook's closest office in Austin Texas, but disputes that applicability of the 100-mile rule of Federal Rule of Civil Procedure 45(c) to 17 U.S.C. § 512(h) and Facebook's argument that it invalidates Facebook's subpoena request.

[4] Requestor represents that his attorney filed all the documents and met all the requirements of § 512(h)(d) and was issued the requested DMCA subpoena.  When he moved to enforce it, the Magistrate Judge denied his motion to compel.  Judge Stacy's Order was signed on Friday, April 24, 2015, but not entered on the

In its review of Requestor's objection, this Court has considered his reply.

Requestor claims to have discovered an unauthorized use of his copyright material on the domain facebook.com ("site") on or about August 2014 and that it needs the subpoena to identify the owner of a Texas auto dealership's Facebook Page that allegedly posted Requestor's copyrighted material without authorization.

The threshold matter of whether this Court needs and has personal jurisdiction over Facebook must be decided before the Court can address the Requestor's reply's first objection that the recipients whose contact information was available on site were not responsive to counsel's numerous efforts to communicate with them and resolve the issue of their unauthorized use of Requestor's purported coyrighted material. The second argument in Requestor's reply, that the legislative history of § 521(h) and the express language of the statute show Congress' intent that any copyright owner can submit required documents to the clerk of **any** federal court to obtain an order of identification (now known as a "Subpoena to Identify Infringer") from an internet service provider, is integral to and will be addressed with the jurisdiction issue.

**Standard of Review**

---

docket sheet until Monday, April 27, 2015.  In between he filed his Reply on April 26, 2015, so it was not before Magistrate Judge Stacy when she made her ruling.

-4-

Title 28 U.S.C. § 636(b)(1)(A) permits a district judge to

> designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.

Moreover it further allows the district court to review and reconsider any pretrial matter decided by the magistrate judge "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." The reviewing district court may determine that a factual finding is "clearly erroneous" when it is "left with the definite and firm conviction that a mistake has been committed." *U.S. v. Stevens*, 487 F.3d 232, 240 (5th Cir. 2007). The district court reviews the magistrate judge's legal conclusions *de novo*. *Lahr v. Fulbright & Jaworski, LLP*, 164 F.R.D. 204, 208 (N.D. Tex. 1996); *Tolan v. Cotton*, H-09-1324, 2015 WL 5332171, at *1 (S.D. Tex. Sept. 14, 2015). In the "vast area of choice that remains to the magistrate judge who has properly applied the law to fact findings that are not clearly erroneous," the standard of review is abuse of discretion. *Lahr*, 164 F.R.D. at 208; *Bancroft Life & Cas. ICC, Ltd. v. FFD Resources II, LLC*, 884 F. Supp. 2d 535, 537-38 (S.D. Tex. 2012). The party who appeals or objects to the magistrate judge's order, here Requestor, must demonstrate how the order is reversible under the

-5-

relevant standard of review.  *Bancroft Life*, 884 F. Supp. 2d at 538.

Under Rule 72(a), when the magistrate judge's order decides a nondispositive motion, "[a] party may serve and file objections to the order within 14 days after being served with a copy."  The district judge may "consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a).  Even where the 14-day rule is not met, it is not jurisdictional and the court may "consider arguments not raised in a timely objection." 12 Wright & Miller, *Fed. Prac. & Proc.* § 3070.1 & n.20 (2d ed., updated April 2012).

### Requestor's Objection (#8)

Requestor contends that the rulings by the magistrate judge are clearly erroneous and/or contrary to the law for the following reasons:  (1) 17 U.S.C. § 512(h) gives Requestor or a person authorized to act on his behalf a right to obtain a subpoena from the clerk of *any* district court; (2) therefore the text and legislative history of 17 U.S.C. § 512(h) do not require a showing of a nexus, venue, or jurisdiction, especially personal jurisdiction, over a named service provider; (3) § 512(h) is not delimited by Fed. R. Civ. P. 45(c), or in the alternative, Facebook *regularly transacts business* within 100 miles of the place of compliance; (4) if a subpoena request under § 512(h) requires personal jurisdiction and proper venue, the Magistrate Judge erred in not accepting as true the uncontroverted allegations related to personal jurisdiction; and (5) Facebook

provides no authority that supports its construction of 17 U.S.C. § 512(h).

Requestor states that Magistrate Stacy's minimal factual findings are not in dispute; rather, the issue here is the construction of § 512(h) as applied to the findings of facts regarding the issued DMCA subpoena.

Requestor initially contends that § 512(h) clearly and unambiguously states that the copyright owner or authorized person may use **any** district court in a non-Article III setting to receive and issue a subpoena to obtain infringer identification information as it relates to a specific act(s) associated with the respective internet service provider, with the express understanding that the information will only be used to protect copyright rights.    17 § 512(h)(2)(C).    He maintains that the magistrate judge's legal conclusion is in clear error because it is contrary to the statute's plain, written, and therefore controlling, meaning in language stating that a copyright owner "may request the clerk of **any** United States District Court to issue" a § 512(h) subpoena.

Requestor further asserts that Fed. R. Civ. P. 45(c) does not apply to § 512(h) because the rule's "place of compliance" does not govern a DMCA subpoena under § 512(h). Section 512(h)(6) (emphasis added) states,

> Unless otherwise provided by this section or by applicable rules of the court, the procedure for **issuance** and **delivery** of the subpoena, and the **remedies for noncompliance** with the subpoena, shall be governed to the greatest extent practicable by those provisions of the Federal Rules of Civil

Procedure governing the **issuance, service** and **enforcement** of a *subpoena duces tecum*.

Requestor argues that matters relating to <u>issuance</u> and <u>delivery</u> of a DMCA subpoena are provided by the explicit wording of § 512(h)((1)-(4): "a copyright owner . . . may request the clerk of any United States district court to *issue* a subpoena to a service provider for identification of an alleged infringer . . . . (§ 512(h)(1); the request must include specific contents (§ 512(h)((2)-(3); if the required contents are submitted, the clerk must *issue* the subpoena for *delivery* to the service provider (§ 512(h)(4). Requestor insists that when these statutory provisions are relevant, Rule 45(a) and (b), but not (c), provide the rules for issuance and service/delivery. Furthermore, <u>remedies for non-compliance</u> with a DMCA subpoena are provided by § 512(h)(6), which appears to invoke Rule 45(d)(2)(B)(i)(motion to compel) and (g)(contempt) as remedies.

Requestor also maintains that the legislative history supports his view that the statute requires the clerk to perform an expeditious, ministerial function, not to exercise discretion over such matters as venue, jurisdiction or distance miles, which Facebook erroneously tries to add on as additional requirements, beyond those referenced in § 512(h)(2)-(3), which would undermine the clerk's express ministerial function. *See In re Verizon Internet Services, Inc.*, 257 F. Supp. 2d 244, 249-57 (D.D.C. 2003)("*Verizon II*")(discussing constitutionally permissible ministerial function of the clerk), *citing Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 498 (1866). Requestor discusses the

legislative history of the statute, pointing out reports indicating that "the issuing of the order should be a ministerial function for this provision to have its intended effect."

Furthermore, insisting that the statute should be readily accessible to a copyright owner, Requestor argues that the legislative history reveals that the statute is a bargain between service providers and copyright owners. To give the service providers certainty and a stimulus to expand the internet, the safe harbor provisions of § 512(a)-(d) protect them from liability and benefit them, while in turn the copyright owners were allotted a number of tools and mechanism for use in the future copyright infringement litigation. *See, e.g.,* § 512(c)(3) ("Elements of notification.").[5] To require the typical layman copyright owner

---

[5]    Section    512(c)(3)    provides,    "Elements    of notification."--

>   (A) To be effective under this subsection, a notification of claimed infringement must be written communication to the designated agent of a service provider that includes substantially the following:

>   > (i) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

>   > (ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works as a single online site are covered by a single notification, a representative list of such works at that site.

>   > (iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information

without counsel to satisfy not only the notice of infringement requirements, but also to know what was required to show personal jurisdiction, proper venue, and "a murky mileage constraint embedded within a rule that is not referenced within the statute," would be extraordinarily difficult, argues Requestor. #8 at p. 14. Instead he urges a construction of the statute that does not remove ease and accessibility from the layman owner nor give a *de facto* windfall and extra safe harbor for the service providers by requiring additional showing of venue, jurisdiction and mileage.

Requestor charges that Facebook does not provide any authority for its construction of § 512(h) as requiring a showing of proper jurisdiction and venue.[6] Instead, Requestor contends

---

> reasonably sufficient to permit the service provider to locate the material.
>
> (iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.
>
> (v) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.
>
> (vi) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

[6] Requester argues that *In re Subpoena to Univ. of N. Ca. at Chapel Hill*, 367 F. Supp. 2d 945, 957 (M.D.N.C. 2005), relied on by Facebook for its interpretation, is nonbinding on this Court and did not involve a subpoena quashed for improper

-10-

based on the language it uses, that Rule 45 may only apply to the statute with respect to "issuance, service/delivery, remedies for noncompliance, and place of compliance."  Facebook is working under the § 512(c) safe-harbor functionality, making it applicable to the DMCA subpoena process, and the subpoena was served on Facebook in accordance with § 512(h)(4).[7]  Requestor objects that Facebook provides no authority for its construction of § 512(h) interpreted or rewritten or governed by Rule 45(c) other than *Usov v. Lazar*, No. 13 Civ. 818 (RWS), 2014 WL 4354691, at *14-15 (S.D.N.Y. Sept. 2, 1014)(quashing a subpoena served on Credit Suisse AG because it violated Rule 45(c)'s 100-mile limit).[8]

Requestor asserts that if Facebook finds the DMCA subpoena process burdensome, it can chose any of a number of

---

venue or lack of jurisdiction.  Instead that North Carolina court, (1)agreed with *Recording Ind. Assoc. of Am. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1238 (D.C. Cir. 2003)("*Verizon III*")(narrowing application of § 512(h) to "nonconduit" cases, i.e., the statute does not apply to service providers operating under a § 512(a) safe harbor functionality because such an application would require the court to rewrite the clear language of the statute), and (2) the service of the DMCA subpoena on the State of North Carolina was improper because of the 100-mile limit of Rule 45(b) in effect at that time.  He claims neither point is relevant here.

[7] Section 512(h)(4) states, "If the notification filed satisfies the provisions of subsection (c)(3)(A)["Elements of notification"], the proposed subpoena is in proper form, and the accompanying declaration is properly executed, the clerk shall expeditiously issue and sign the proposed subpoena and return it to the requester for delivery to the service provider."

[8] The *Copyright Litigation Handbook* § 14:10 "Protective orders and motions to compel (2d ed.), relies on *In re Subpoena to Univ. of N. Ca. at Chapel Hill*, 367 F. Supp. 2d 945, for the same interpretation that Facebook asserts here.  On the other hand, the Court observes that it is Requestor who presents no authority for his refusal to apply Rule 45(c) to § 512(h).

-11-

options, including cooperating and providing information by email to copyright owners without forcing copyright owners to obtain a DMCA subpoena.

While it argues that a subpoena request under § 512(h) does not require a showing that the Court has personal jurisdiction over the service provider, even if it did, Requestor insists this Court does have personal jurisdiction over Facebook. The Supreme Court in *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952) held that a court can exercise general personal jurisdiction[9] over a corporation based on the corporations's "continuous and systematic" contacts with the forum. He observes that Magistrate Judge Stacy does not appear to have considered uncontroverted allegations in Requestor's subpoena request (#1 at p.2) and motion to compel (#3 at 13-15) that hundreds of thousands of users in this forum interact with Facebook's site on a daily basis. He also quotes from *Mink v. AAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999):

---

[9] With regard to personal jurisdiction, a defendant's minimum contacts with a forum state can be "general" or "specific." *Cent. Freight Lines, Inc. v. APA Trans. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003); Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 215 (5th Cir. 2000). For a court to have specific jurisdiction, the defendant must purposefully avail itself of the privileges of conducting activities in the forum state and the litigation must result from alleged injuries arising out of or relating to those activities. *Alpine*, 205 F.3d at 215, citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). For a court to have general jurisdiction, the defendant's contacts with the forum state must be "substantial and 'continuous and systematic,' but unrelated to the instant cause of action." *Cent. Freight Lines*, 322 F.3d at 381, citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). It is general jurisdiction that is at issue in this case.

-12-

> Courts addressing the issue of whether [general] personal jurisdiction can be constitutionally exercised over a defendant look to the "nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). The *Zippo* decision categorized Internet use into a spectrum of three areas. At one end of the spectrum, there are situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states which "involve the knowing and repeated transmission of computer files over the Internet. . . . " *Zippo*, 952 F. Supp. at 1124. In this situation personal jurisdiction is proper. *See id.* (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996). At the other end of the spectrum, there are situations where a defendant merely establishes a passive website that does nothing more than advertise on the Internet. With passive websites, personal jurisdiction is not appropriate. *See id. (citing* Bensusan Restaurant Corp. v. King, 937 F. Supp. 295 (S.D.N.Y. 1996), *aff'd*, 136 F.3d 25 (2d Cir. 1997). In the middle of the spectrum, there are situations where a defendant has a website that allows a user to exchange information with a host computer. In this middle ground, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website." *Id.* (citing *Maritz, Inc. v. Cybergold, Inc.*, 947 F. Supp. 1328 (E.D. Mo. 1996)). We find that reasoning of *Zippo* is persuasive and adopt it in this Circuit.

Stating that the forum contains about eight million people of which it believes approximately one million, or 12.5%, are daily users,[10] Requestor argues that Facebook collects information from,

---

[10] Decl. of John M. DeBoer In Support of the Objection, #8, Ex. D ¶ 5 and Ex. C, ¶ 4. Respondents suggests that further discovery would provide accurate information about the daily users. Facebook properly objects that this Court's review is limited to the record that was before the Magistrate Judge and both the evidence attached to the object and the discovery request

-13-

advertises to, and/or collects and otherwise earns revenues through its users as a result of their activities and interaction with its site and suggests that its site is highly interactive, purposefully directed to forum users and directly to the advertising of Facebook, and results in ongoing binding terms against daily forum active users. Requestor does concede that in *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002), the Fifth appeared to question and limit *Mink*, but did not overturn it:

> While we deployed this sliding scale in *Mink v. AAA Development LLC*, it is not well adapted to the general jurisdiction inquiry, because even the repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction--in other words, while it may be doing business *with* Texas, it is not doing business *in* Texas.[11]

---

are irrelevant here. *Moore v. Ford Motor Co.*, 755 F.3d 802, 808 (5th Cir. 2014)("At issue here is a non-dispositive order subject to Rule 72(a) clear error review. Because the district court's review of the magistrate judge's factual findings was limited to clear error review, there appears to be no basis for the district court to have received additional evidence. Accordingly, the district court did not abuse its discretion in denying leave to depose Ford's corporate representative."). Thus the Court ignores these arguments.

[11] *See also Southern U.S. Trade Ass'n v. Unidentified Parties*, Civ. A. No. 10-1669, 2011 WL 2457859 at *9-10 (E.D. La. June 16, 2011)("The Fifth Circuit's analysis in *Revell* thus indicates that, at best, the interactivity of the website is only a single, non-dispositive factor in resolving the question of personal jurisdiction . . . . At worst, it demonstrates that whether a website is passive or interactive is simply not a relevant consideration. In other words, the reasoning in *Revell* suggests that 'the analysis applicable to a case involving jurisdiction based on the Internet . . . should not be different at its most basic level from any other personal jurisdiction case.' 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1073.1 (3d ed. 2004)."

-14-

Requestor further claims that venue is proper because Facebook is subject to personal jurisdiction in this forum.

Requestor also emphasizes that it regularly transacts business (advertising) within 100 miles of the place of production under the subpoena, so the subpoena is not in violation of Rule 45(c)(3)(A)(ii).

Finally, Requestor stresses that the identification of the alleged infringer is still unknown. It argues that the language of § 512(h) does not require that a copyright owner go through all available means of searching to find out the identification of an infringer before applying for a DMCA subpoena. Second, some courts have weighed various factors to balance the need for identification versus First Amendment rights. *See, e.g., Well Go USA, Inc. v. Unknown Participants in Filesharing Swarm*, Civ. A. No. 4:12-cv-0963, 2012 WL 4387420 (S.D. Tex. Sept. 25, 2012). Third, if a DMCA subpoena request must show an "absence" or alternative means to obtain the subpoenaed information, Facebook has met this requirement multiple times in unsuccessfully attempting to contact the parties via the information provided on Facebook's page.

Thus Requestor asks this Court to order Facebook to immediately comply with the issued DMCA subpoena.

### Facebook's Response (#9)

Pointing out that Requestor cites no authority for his claim that general venue and jurisdiction rules do not apply to § 512(h) subpoenas, Facebook relies on *In re Subpoena to Univ. of N. Ca. at Chapel Hill*, 367 F. Supp. 2d 945, 957 (M.D.N.C.

2005)(refusing to construe § 512(h) as a nationwide venue and jurisdiction statute)("The fact that a party may be served at any place in the country does not mean that every court has jurisdiction over the matter and venue is proper everywhere."). While § 512(h) permits a copyright owner or authorized agent to seek a subpoena from any district court, it does not state that "every district court has jurisdiction to issue a subpoena compelling action from persons outside the district." *Id.*

Moreover, the court in *In re Subpoena to Univ. of N. Ca.* held that Fed. R. Civ. P. 45(b)'s phrase, "within 100 miles of the place of the deposition, hearing, trial, production or inspection specified in the subpoena," refers to places only in the district which issued the subpoena. 367 F. Supp. 2d at 957. The court explained its rationale, *id.* at n.8:

> Were the language to be read otherwise, a party could set the place of production or inspection at any location throughout the country and then serve the subpoena within 100 miles of that place. Such a reading of Rule 45 would provide every district court with nationwide jurisdiction, venue, and service for its subpoenas. There is no indication in Rule 45 that such was intended.

In sum, the rule requires Requestor to go to a court in the district in which Facebook "resides" to obtain a § 512(h) subpoena. The Court agrees with Facebook and finds that Judge Stacy's ruling was not contrary to law.

Furthermore Facebook points out that Requestor improperly challenges the analysis of venue and jurisdiction in *In re Subpoena to Univ. of N. Ca.* for the first time in his objection. *See Ransom v. Nat'l City Mortgage Co.*, No. 13-CV-4642,

-16-

2014 WL 717198, at *1 (N.D. Tex. Feb. 25, 2014)("Generally arguments that could have been raised before the magistrate judge are waived if they are raised for the first time in objections before the district court.")(*citing Cupit v. Shitley*, 28 F.3d 532, 535 (5th Cir. 1994) and *Hull v. Ocwen Loan Servicing LLC*, No. 3:12-cv-1098-M (BF), 2013 WL 3089050, at *8 (N.D. Tex. June 19, 2013)("Defendants are not entitled to raise arguments for the first time in their objections to the Magistrate Judge's Findings, Conclusions, and Recommendation that were not asserted in their motion.")), *aff'd*, 595 Fed. Appx. 304 (5th Cir.2014).  Requestor has not shown any authority to the contrary and thus he waived the objection.

Although Requestor claims that Magistrate Judge Stacy's venue finding was wrong because Facebook is subject to general personal jurisdiction in this district, Facebook emphasizes that the United States Supreme Court has held that only in an "exceptional case" does a court have general jurisdiction over a corporation outside of its state of incorporation or its principal place of business. *Daimler AG v. Bauman*, 134 S. Ct. 746, 760, 761 n.19 (2012)("'For a corporation, [the paradigm form for the exercise of general jurisdiction is] . . . one in which the corporation is fairly regarded as at home'"; to look beyond these two bases and "approve the exercise of general jurisdiction in every State in which a corporation 'engages in substantial, continuous, and systematic course of business" . . . is

-17-

unacceptably grasping.").[12]   Here, too, highlights Facebook, Requestor cites no authority or analysis showing that this is an "exceptional case," but merely and erroneously attempts to conflate jurisdiction with subpoena power.   This Court observes that courts in the Fifth Circuit have also emphasized the narrow definition of an "exceptional case" to exempt it from traditional general jurisdiction analysis.  *See, e.g., Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)("It is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business.")*(citing Daimler AG)*; *Whitener v. Pliva, Inc.*, 606 Fed. Appx. 762, 764-65(5th Cir. 2015)(quoting both *Daimler AG* and *Monkton Ins.*); *Locke v. Ethico Inc.*, 58 F. Supp. 3d 757, 762 (S.D. Tex. 2014)("'[For a corporation, [the paradigm forum for exercise of general jurisdiction is] one in which the corporation is fairly regarded as at home--typically, 'the place of incorporation and principle place of business. . . . A corporation is *not* 'at home' in every state in which it 'engages in a substantial, continuous, and systematic course of business.' . . . 'Otherwise, 'at home' would be synonymous with 'doing business' tests,' implicating the exercise of specific jurisdiction. . . .  In other words, the test is 'not [simply] whether [the] corporation's in-forum contacts can

---

[12] In *Daimler*, 134 S. Ct. at 760-61, the Supreme Court noted that in determining general jurisdiction the court asks whether the defendant's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum state," but added, "It is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business."

be said to be in some sense 'continuous and systematic.' It is the exceptional case that 'a corporation's operations in a forum other than its formal place of incorporation or principal place of business [are] so substantial and of such a nature as to render the corporation at home in that State.'")(*quoting Daimler AG,* citations omitted)); *Mullen v. Bell Helicopter Textron, Inc.,* _ _____ F. Supp. 3d ____, No. 1:15CV158-LG-RHW, 2015 WL 5882057, at *3-4 (S.D. Miss. Aug. 17, 2015)("Rolls-Royce Corporation's business registration in Mississippi does not establish that it is 'at home' in Mississippi."). Furthermore, Facebook points out that *Mink v. AAA Development LLC,* with its sliding scale approach to general jurisdiction depending on the degree of interactivity of a website, was decided more than ten years before the issuance of *Daimler AG* with its clear message that general personal jurisdiction nearly always is based on a corporation's state of incorporation and where its corporate headquarters is found. Again the Court finds that Magistrate Judge Stacy's legal conclusion, that the Court has no general personal jurisdiction over Facebook because it lacks sufficient continuous and systematic contacts with the Southern District of Texas that would fairly make it "at home" here, is not factually clearly erroneous nor contrary to law and should be upheld.

In addition, as Magistrate Judge Stacy opined, § 512(h)(6) explicitly directs, "[T]he procedure for issuance and delivery of the subpoena, and the remedies for noncompliance with the subpoena, shall be governed to the greatest extent practicable by those provisions of the Federal Rules of Civil Procedure

governing the issuance, service, and enforcement of a subpoena duces tecum." The Court finds unpersuasive Requestor's contention that because it is not mentioned in § 512(h), Rule 45(c)(1)(A) does not apply to subpoena's issued under the statute. The Court agrees with the magistrate judge that nothing within that provision is contrary to Rule 45(c)(1)(A), that it is practicable to follow the procedural rule, and that its 100-mile rule therefore applies.

Once again Facebook argues that Requestor already has the necessary information to find the alleged copyright infringer. The First Amendment of the United States Constitution requires Requestor to demonstrate an "absence of alternative means to obtain the subpoenaed information." *Well Go USA*, 2012 WL 4387420, at *1. *Well Go USA* addresses the need to balance disclosure against First Amendment interests where the plaintiff seeks to use either a § 512(h) or Rule 45 subpoena to uncover the identity of multiple anonymous defendants. *Id.* Other courts have also recognized the need to examine § 512(h) subpoenas for First Amendment issues. *See. e.g., In re Verizon Internet Services, Inc.*, 257 F. Supp. 2d 244, 260 (D.D.C. 2003)(and cases cited therein). If Requestor cannot locate the identity of the infringer from the information he has, as he claims, Facebook notes that he can comply with § 512(h) and Rule 45(c), issue a subpoena from a court in a district where Facebook does reside, and thus avoid imposing undue burden or expense on nonparty Facebook by complying with Rule 43(d) ("Protecting a Person Subject to a Subpoena"). The Court agrees.

-21-

In sum, the Court finds that Magistrate Judge Stacy's order denying Requestor's motion to compel is not clearly erroneous as to its factual findings nor contrary to law.  Nor did she abuse her discretion in all other respects.  Accordingly the Court

OVERRULES Requestor's objection (#8) and AFFIRMS the Magistrate Judge's Order denying his motion to compel.

**SIGNED** at Houston, Texas, this 18th day of November 2015.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE